UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>        Plaintiff,<br><br>    v.<br><br>ONE PAINTING/PASTEL TITLED "LA<br>COIFFURE" BY EDGAR DEGAS,<br>        Defendant. | )<br>)<br>)<br>)<br>)  Civil Action No.<br>)<br>)<br>)<br>) |

04c 10627 RCL

### VERIFIED COMPLAINT FOR FORFEITURE IN REM

The United States of America, by its attorney, Michael J. Sullivan, United States Attorney for the District of Massachusetts, in a civil action of forfeiture pursuant to Title 18, United States Code, Section 981(a)(1)(A), alleges that:

1. This Court has jurisdiction in this matter pursuant to 28 U.S.C. §§ 1345, 1355, and 1356. Venue is appropriate pursuant to 28 U.S.C. § 1395.

2. The *in rem* defendant property is now, and, during the pendency of this action, will be within the jurisdiction of this Court.

3. The defendant property is described as one painting/pastel titled "La Coiffure" by Edgar Degas (the "Defendant Degas").

4. As detailed in the Affidavit of United States Department of Homeland Security, U.S. Immigration and Customs Enforcement Special Agent Edward P. Murphy, attached hereto as Exhibit A, and incorporated herein by reference, the United States has probable cause to believe that the Defendant Degas constitutes property,

real or personal, involved in a money laundering conspiracy, in violation of Title 18, United States Code, Section 1956(h).

5. The Defendant Degas is, therefore, subject to forfeiture to the United States pursuant to 18 U.S.C. § 981(a)(1)(A).

WHEREFORE, the United States of America prays:

1. That a warrant and monition, in the form submitted herewith, be issued to the Secretary of the Department of Homeland Security, or his designee, commanding him to: (a) seize the Defendant Degas, and (b) give notice to all interested parties to appear and show cause why the forfeiture should not be decreed;

2. That judgment of forfeiture be decreed against the Defendant Degas;

3. That thereafter, the Defendant Degas be disposed of according to law; and

4. For costs and all other relief to which the United States may be entitled.

Respectfully submitted,
MICHAEL J. SULLIVAN
United States Attorney

By: *(signature)*
SHELBEY D. WRIGHT
Assistant U.S. Attorney
1 Courthouse Way, Suite 9200
Boston, MA 02210
(617) 748-3100

Dated: March 31, 2004

2

## VERIFICATION

I, Special Agent Edward P. Murphy state that I have read the foregoing Verified Complaint for Forfeiture In Rem and the Affidavit, attached as Exhibit A, and that the contents thereof are true to the best of my knowledge, information and belief.

*Edward P. Murphy*
Edward P. Murphy
Special Agent
United States Department of
Homeland Security
U.S. Immigration and Customs
Enforcement

Dated: March 30, 2004

COMMONWEALTH OF MASSACHUSETTS

Suffolk, ss.                                        Boston

Then personally appeared before me the above-named Special Agent Edward P. Murphy, who acknowledged the foregoing to be true to the best of his knowledge, information and belief, on behalf of the United States of America.

Subscribed to and sworn to before me this 30th day of March, 2004.

*Linda Cotton*
Notary Public
My commission expires: 11/13/09

N:\LTalbot\wright\Artwork\Degas complaint.wpd

**EXHIBIT A**

**AFFIDAVIT OF EDWARD P. MURPHY**

I, Edward P. Murphy, state the following under oath:

1. I am a Special Agent with the United States Department of Homeland Security, U.S. Immigration and Customs Enforcement (ICE) and have been so employed for approximately twenty-one (21) years. I am currently assigned to the Asset Identification & Removal Group (AIRG) in the Boston Field Office, a position I have held since October 2001. As a Special Agent, I have received training in both Customs and Immigration law and procedures, including the asset forfeiture provisions related to those laws.

2. My current duties as a Special Agent involve the identification of property and assets which are subject to criminal and/or civil forfeiture. In this position, I trace, seize and forfeit assets and proceeds derived from or used in unlawful activities, including money laundering, and narcotics smuggling.

3. I submit this affidavit in support of a Complaint for Forfeiture <u>in</u> <u>rem</u> against one painting/pastel titled "La Coiffure" by Edgar Degas (the "Defendant Degas"). As described in this Affidavit, I have probable cause to believe that the Defendant Degas constitutes property, real or personal, involved in a money laundering conspiracy, in violation of Title 18,

1

United States Code, Section 1956(h), and is, therefore, subject to forfeiture to the United States pursuant to 18 U.S.C. § 981(a)(1)(A).

4. This civil forfeiture stems from a criminal investigation and prosecution of defendants Shirley Sack ("Sack") and Arnold Katzen ("Katzen"). Sack and Katzen were indicted on or about November 13, 2001, on charges of Money Laundering Conspiracy (18 U.S.C. § 1956(h)), and Attempted Money Laundering (18 U.S.C. § 1956(a)(3)). The Indictment charged that Sack and Katzen conspired to conduct and attempt to conduct financial transactions affecting interstate and foreign commerce and involving property, to wit: $4,100,000 in United States currency that was represented by a law enforcement officer to be proceeds of specified unlawful activity, to wit: illegal narcotics trafficking and importation, in violation of 21 U.S.C. §§ 841, 846, and 952; with the intent to promote the carrying on of specified unlawful activity, to wit: illegal narcotics trafficking and importation, and with the intent to conceal and disguise the nature, location, source, ownership, and control of property believed to be the proceeds of such specified unlawful activity, in violation of 18 U.S.C. § 1956(a)(3)(A) and (B).

5. As part of the money laundering conspiracy, Shirley Sack promoted herself as a dealer in fine art who was capable of selling various works of art to be paid for in cash, as a way to

launder money earned through illegal drug trafficking. Arnold Katzen promoted himself as the proprietor of American European Art Associates, located at 1100 Madison Avenue in New York City, and as an international dealer in fine art who was capable of selling various works of art to be paid for in cash, as a way to launder money earned through illegal drug trafficking. Sack and Katzen offered to resell overseas any works of art first sold by them to an undercover agent whom they believed to be involved in illegal drug trafficking.

6. On March 22, 2001, an individual, acting on behalf of Sack, executed a commission agreement with two individuals who claimed to represent a client who was interested in purchasing a piece of art by Raphael Sanzio entitled "St. Benedict Receiving Mauro and Placido" (the "Raphael") for approximately $12,000,000 in U.S. currency. On March 27, the individual traveled to Boston, Massachusetts, met in the lounge of the Four Seasons Hotel with an undercover agent, and showed documents to the undercover agent purporting to authenticating the Raphael.

7. On April 8, 2001, the individual, acting on behalf of Sack, sent a package to an undercover agent that contained documents detailing two pieces of art, Amedeo Modigliani's "Jeune Femme aux Yeux Bleus" (the "Modigliani"), and the Defendant Degas, Edgar Degas' "La Coiffure", along with a typed letter. On April 18, 2001, the individual traveled to Boston and met with an

undercover agent at the Hilton Hotel in Dedham, Massachusetts. On April 24, 2001, Sack telephoned a cooperating witness and asked the cooperating witness if s/he was sure the prospective buyer (who was an undercover agent) was "not FBI".

8.  On May 4, 2001, Sack and Katzen met with the undercover agent and a cooperating witness at Katzen's office at American European Art Associates in New York City, to discuss selling the Modigliani and the Defendant Degas to the undercover agent for approximately $4,100,000 in U.S. currency.  Katzen suggested to the undercover agent that they first wrap up the deal for the Modigliani and the Defendant Degas, take a month or two, and then move on to another deal with additional works of art.  Katzen also suggested exporting the works of art out of the United States for resale.  Sack and Katzen explained to the undercover agent that it could take them six months to one year to resell the Modigliani and the Defendant Degas.

9.  Between May 7 and May 17, 2001, Katzen sent a package to the undercover agent that contained copies of the same documents that had previously been sent on April 8.  The documents purported to authenticate the Modigliani and the Defendant Degas.  On May 17, 2001, Katzen spoke by telephone with the undercover agent and told the undercover agent that he (Katzen) was going out of town at the end of May and wanted to get the transactions completed before he left.  On May 25, 2001,

4

Katzen again spoke to the undercover agent and told the undercover agent that they could build up an inventory in Europe and market that inventory creatively, and establish a long-term relationship in moving "large amounts." Katzen also asked the undercover agent in whose name the bill of sale should be prepared.

10. Katzen and Sack traveled to Boston and checked into the Ritz Carlton Hotel in Boston. On May 30, 2001, Sack and Katzen met with the undercover agent in a hotel room in Boston. They informed the undercover agent that the Modigliani and the Defendant Degas were stored at the Ritz Carlton Hotel in Boston, and that they were ready to complete the deal. Katzen told the undercover agent that he had prepared the bill of sale for the paintings and had listed the buyer as Universal Investments. The undercover agent had previously told Katzen that "Universal Investments" was a straw company.

11. On May 31, 2001, Sack and Katzen met with the undercover agent at the Seaport Hotel in Boston, where they unwrapped and displayed the Modigliani and Defendant Degas. Sack and Katzen produced a bill of sale listing the Defendant Degas, the Modigliani, the sale price of $4,100,000 and the buyer's name as "Universal Investments." They also produced a money counting machine and proceeded to count approximately $300,000 in cash which the undercover agent offered as the first installment of

the $4,100,000. Shortly thereafter, Sack and Katzen were placed under arrest.

12. On February 24, 2004, Katzen pleaded guilty to a Superseding Information charging one count of violating 18 U.S.C. § 371. The United States dismissed the November 13, 2001, money laundering Indictment. As part of his plea agreement, however, Katzen expressly agreed to the forfeiture of his interest in the Defendant Degas.

13. On March 22, 2004, Sack also pleaded guilty to a Superseding Information charging one count of violating 18 U.S.C. § 371. The United States dismissed the November 13, 2001, money laundering Indictment.

14. Based on the information described above, I have probable cause to believe that the Defendant Degas constitutes property, real or personal, involved in a money laundering conspiracy, in violation of Title 18, United States Code, Section 1956(h), and is, therefore, subject to forfeiture to the United States pursuant to 18 U.S.C. § 981(a)(1)(A).

Signed under the pains and penalties of perjury this 30th day of March, 2004.

*Edward P. Murphy*
Edward P. Murphy
Special Agent
United States Department of
Homeland Security
U.S. Immigration and Customs
Enforcement